# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PYRAMID LAKE PAIUTE TRIBE**            )<br>208 Capitol Hill Road                              )<br>P.O. Box 256                                           )<br>Nixon, Nevada 89424                             )<br>                                                                )<br>        PLAINTIFF,                                     )<br>                                                                )<br>        v.                                                      )<br>                                                                )<br>**KATHLEEN SEBELIUS**, in her official capacity )<br>as Secretary,                                          )<br>U.S. Department of Health & Human Services )<br>200 Independence Ave, S.W.                 )<br>Washington, DC 20201                          )<br>                                                                )<br>**YVETTE ROUBIDEAUX**, in her official capacity )<br>as Director,                                             )<br>Indian Health Service                             )<br>801 Thompson Avenue, Ste. 400          )<br>Rockville, MD 20852-1627                    )<br>                                                                )<br>**DOROTHY A. DUPREE,** in her official capacity )<br>as Area Director                                      )<br>Phoenix Area Indian Health Service     )<br>Two Renaissance Square                      )<br>40 North Central Avenue                      )<br>Phoenix, AZ 85004                                 )<br>                                                                )<br>                                                                )<br>        DEFENDANTS.                              )<br>                                                                ) | Civil Action No. 13-____<br><br><br><br>**COMPLAINT** |

Served:        The Honorable Eric H. Holder, Jr.
                   Attorney General of the United States
                   Department of Justice
                   950 Pennsylvania Avenue, NW
                   Washington, D.C.   20530-0001

                   The Honorable Ronald C. Machen, Jr.
                   United States Attorney for the District of Columbia
                   555 Fourth Street, NW
                   Washington, D.C.   20530

## COMPLAINT FOR DECLARATORY, MANDAMUS AND INJUNCTIVE RELIEF

The Plaintiff, for its causes of action against the Defendants named above, alleges as follows:

### INTRODUCTION

1. Plaintiff, the Pyramid Lake Paiute Tribe (hereinafter "Tribe"), is a federally-recognized Indian Tribe that operates a comprehensive health services delivery program for its members and other eligible American Indians and Alaska Natives in the State of Nevada. The Tribe operates its health services delivery program under a contract and annual funding agreements with the Indian Health Service (IHS), authorized by Title I of the Indian Self-Determination and Education Assistance Act (ISDEAA), 25 U.S.C. § 450f, *et seq.*

2. The Tribe submitted a contract proposal to the Secretary under Title I of the ISDEAA to assume an Emergency Medical Service/Ambulance program (hereinafter "EMS program") and have that program and associated funding added to the Tribe's existing Title I contract with the IHS. According to the IHS, the EMS program has been administered and operated by the Schurz Service Unit of the Phoenix Area of the IHS on behalf of the Ft. McDermitt Paiute-Shoshone Tribe (FMT) at the Ft. McDermitt Indian Reservation in Humboldt, County, Nevada, since approximately 1993.

3. The Tribe's proposal included a resolution of the governing body of the FMT designating the Tribe as the FMT's tribal organization to contract the EMS program on behalf of the FMT under the ISDEAA.

4. Title I of the ISDEAA directs the Secretary, "upon the request of any Indian tribe by tribal resolution, to enter into a self-determination contract or contracts with a tribal organization to plan, conduct, and administer programs or portions thereof." 25 U.S.C. §

450f(a)(1).  The ISDEAA requires that the Secretary, within 90 days of receipt of the contract proposal, either approve the proposal and award the contract or decline the proposal under the declination requirements of 25 U.S.C. § 450f(a)(2).

5. The IHS received the FMT's resolution, authorizing the Plaintiff as the legal entity to operate the EMS program on behalf of the FMT, on January 14, 2013.  The Plaintiff's EMS proposal is dated June 21, 2013.  The Phoenix Area Office of the Indian Health Service (hereafter "PAIHS") avers that it received the proposal on July 8, 2013.  The IHS issued a letter declining the Plaintiff's contract proposal on September 30, 2013.

6. During the 90 day review period, after receipt of the Tribe's proposal, the PAIHS terminated the EMS program and contracted instead with the Humboldt General Hospital in Winnemucca, Nevada, to provide EMS services to the Fort McDermitt Reservation.  This violates Sections 102(a)(1) and (2) of the ISDEAA, 25 U.S.C. §§ 450f(a)(1) and (a)(2).

7. The Tribe asks this Court: (1) to declare that the IHS's termination of the EMS program, after receiving the FMT's resolution and the Tribe's contract proposal, violates the ISDEAA; and (2) to reverse the declination decision and order the Federal defendants to award and fund the contract as proposed.

## JURISDICTION AND VENUE

8. This court has jurisdiction under section 110(a) of the ISDEAA, 25 U.S.C. § 450m-1(a), which provides in pertinent part:

> The United States district courts shall have original jurisdiction over any civil action or claim against the appropriate Secretary arising under this [Act] . . . In an action brought under this paragraph, the district courts may order appropriate relief including money damages, injunctive relief against any action by an officer of the United States or any agency thereof contrary to this [Act] or regulations promulgated thereunder, or mandamus to compel an officer or employee of the United States, or any agency thereof, to perform a duty provided under this [Act] or regulations promulgated hereunder (including immediate injunctive relief to

reverse a declination finding under section 450f(a)(2) of this title or to compel the Secretary to award and fund an approved self-determination contract).

9. Venue is proper under 28 U.S.C. §1391(e) because the U.S. Department of Health and Human Services is located in the District of Columbia.

## PARTIES

10. The Pyramid Lake Paiute Tribe is a federally recognized Indian Tribe. The Tribe operates a health facility and provides health care services to its tribal members and other individuals under a self-determination contract and annual funding agreement (AFA) with the IHS, under Title I of the ISDEAA, 25 U.S.C. § 450f, *et seq*.

11. Defendant Kathleen Sebelius, the Secretary of Health and Human Services (Secretary), has overall responsibility for carrying out all the functions, responsibilities, authorities and duties of the U.S. Department of Health and Human Services, including oversight of the IHS, an agency within the Department. She is sued in her official capacity.

12. Defendant Yvette Roubideaux is the Director of the IHS, the agency charged by law with the responsibility for implementing the ISDEAA and other health laws benefiting American Indians and Alaska Natives, on behalf of the United States, 25 U.S.C. § 1661(c)(3). She is sued in her official capacity.

13. Defendant Dorothy A. Dupree is the Director of the PAIHS. In this capacity, she is the IHS official in charge of administering the Tribe's Title I contract and AFAs with the IHS. She is the IHS official who issued the IHS decision being challenged in this action. She is sued in her official capacity.

## STATUTORY AND REGULATORY BACKGROUND

14. The ISDEAA authorizes Indian tribes and tribal organizations to assume responsibility to administer programs, functions, services and activities (or portions thereof ) that

the Secretary would otherwise provide under federal law to Indians and Alaska Natives. 25 U.S.C. § 450f(a)(1). The purpose of the ISDEAA is to reduce federal domination of Indian programs and promote tribal self-determination and self-governance. 25 U.S.C. § 450a(b); *Cherokee Nation v. Leavitt*, 543 U.S. 631, 639 (2005). The ISDEAA reflects the United States' commitment "to supporting and assisting Indian tribes in the development of strong and stable tribal governments, capable of administering quality programs and developing the economies of their respective communities." 25 U.S.C. § 450a(b).

15. Title I of the ISDEAA directs the Secretary, "upon the request of any Indian tribe by tribal resolution, to enter into a self-determination contract or contracts with a tribal organization to plan, conduct, and administer programs or portions thereof." 25 U.S.C. § 450f(a)(1).

16. The Secretary is required to award the contract or decline the proposal in compliance with Section 102 of the ISDEAA. 25 U.S.C. § 450f(a)(2); 25 C.F.R. § 900.16. Section 102(a)(2) of the ISDEAA provides that the Secretary may only decline to approve a contract proposal for one of five specific reasons that are demonstrated or supported by controlling legal authority:

    (A)    the service to be rendered to the Indian beneficiaries of the particular program or function to be contracted will not be satisfactory;
    (B)    adequate protection of trust resources is not assured;
    (C)    the proposed project or function to be contracted for cannot be properly completed or maintained by the proposed contract;
    (D)    the amount of funds proposed under the contract is in excess of the applicable funding level for the contract, as determined under section 106(a) [of the ISDEAA]; or
    (E)    the program, function, service, or activity (or portion thereof) that is the subject of the proposal is beyond the scope of programs, functions, services, or activities covered under [Section 106(a)(1) of the ISDEAA] because the proposal includes activities that cannot lawfully be carried out by the contractor.

25 U.S.C. §§ 450f(a)(2)(A)-(E).

17. The Secretary cannot decline a Title I contract proposal when the Secretary's objections can be overcome through the terms of the contract. 25 C.F.R. § 900.23.

18. Section 106(a)(1) of the ISDEAA requires the Secretary to add funding to a contract in an amount "not . . . less than the appropriate Secretary would have otherwise provided for the operation of the programs or portions thereof for the period covered by the contract, without regard to any organizational level within the . . . Department of Health and Human Services . . . at which the program, function, service, or activity or portion thereof, including supportive administrative functions that are otherwise contractible, is operated." 25 U.S.C. § 450j-1(a)(1).

19. Sections 106(a)(2) and (3) of the ISDEAA require the Secretary to add contract support costs to the Section 106(a)(1) amount, and Section 106(a)(5) of the ISDEAA requires the Secretary to add "startup costs." 25 U.S.C. §§ 450j-1(a)(2), (3), (5).

20. The ISDEAA allows for quarterly, semi-annual, lump-sum or other methods of payment at the Tribe's option, 25 U.S.C. § 450*l*(c) (Section 1(b)(6)(B) of the Model Contract).

21. Section 110 of the ISDEAA addresses the jurisdiction of this Court and the types of relief that may awarded, 25 U.S.C. § 450m-1, and the Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes this Court to grant declaratory relief.

22. The regulations governing self-determination contracting under Title I of the ISDEAA are set forth at 25 C.F.R. Part 900.

## GENERAL ALLEGATIONS

23. The FMT is a federally recognized Indian tribe organized under Section 16 of the Indian Reorganization Act of June 18, 1934, 25 U.S.C. § 476. The Fort McDermitt Indian

Reservation, within the IHS Schurz Service Unit, is a small, remote community located near the Nevada/Oregon border.  The nearest large town is Winnemucca, Nevada approximately 74 miles to the south.  Boise, the closest city, is two hours northeast in Idaho.

24. The IHS directly operates an outpatient clinic facility at Fort McDermitt.  The clinic is the primary source of health care services for eligible tribal members and other eligible Indians living on the reservation and in the surrounding service area.  The clinic also serves non-eligible individuals in the geographic service area on an emergency basis.  25 U.S.C. § 1680c(d).

25. Since approximately 1993, the IHS has directly operated the EMS program at the Ft. McDermitt clinic.  The bulk of the operating costs for the EMS program are attributable to IHS personnel costs (*e.g.,* salaries, overtime, and benefits).  IHS avers that it pays for these costs using third party clinic revenues obtained by billing third parties such as Medicare, Medicaid, and health insurers for EMS and other services provided by the clinic, and that it pays for non-personnel costs (*e.g.,* rent, electricity, phone services, vehicle lease, gas, and supplies) from IHS appropriations.

26. The FMT Tribal Council adopted Resolution No. FM13-001-002, dated January 13, 2013, providing that the EMS program is essential to the emergency medical needs and public safety for the tribal community.  This resolution sanctioned the Plaintiff as the FMT's tribal organization for purposes of ISDEAA contracting, 25 U.S.C. § 450b(*l*), and authorized the Plaintiff to enter into negotiations with the IHS to contract the EMS program, including any and all statutory funding amounts and/or any third party revenues to operate the program, 25 U.S.C. § 450f(a)(1).

27. The IHS acknowledged receipt of Resolution No. FM13-001-002 by letter dated March 13, 2013 from Dorothy Dupree, Director PAIHS, to Maxine Smart, Vice-Chairperson,

FMT. The letter advised that the Plaintiff must submit a proposal to commence with this initiative and the PAIHS Office of Self-Determination would assist the Plaintiff with completion of the proposal.

28. Nine days later, on March 21, 2013, the Fort McDermitt Clinic Governing Board met to consider three options discussed in a thirteen page "McDermitt EMS/Ambulance Program Options Analysis" (hereinafter "Options Analysis") prepared by the IHS. As a baseline, the Options Analysis determined that the total operating costs for the Fort McDermitt EMS program were $502,611.30 in FY 2012. This included personnel costs of $463,865.30 funded by third party revenues and other non-personnel operating costs of $38,745.00 funded by IHS appropriations. The Options Analysis discussed three options: (1) contract operation of the EMS program to the Plaintiff under the ISDEAA; (2) transfer operation of the EMS program to the Humboldt General Hospital, a non-IHS facility located in Winnemucca, Nevada; and (3) re-organize the EMS program to lower staffing costs. The Options Analysis recommended option one: move forward and assist the Plaintiff to contract the EMS program under the ISDEAA per the resolution of the FMT.

29. The Tribe submitted its proposal by letter to Dorothy Dupree, Director, PAIHS dated June 21, 2013. IHS avers that it received the Tribe's proposal on July 8, 2013. The Tribe proposed to assume operation of the Fort McDermitt EMS program under the Tribe's existing self-determination contract and AFA with the IHS. The proposal noted that the Tribe had already incorporated EMS services at Pyramid Lake into its existing contract and AFA in 2012. The Tribe requested that the Fort McDermitt EMS program and associated funding be incorporated into the Tribe's AFA for FY 2013, not later than July 31, 2013.

30.    The Tribe's proposal requested $502,611.30 for operating costs under Section 106(a)(1) of the ISDEAA, 25 U.S.C. § 450j-1(a)(1).  This was the amount that the Options Analysis stated was spent by the IHS to operate the EMS program in FY 2012.  In addition, the proposal requested $196,739.00 for startup costs for the EMS programs at Fort McDermitt and Pyramid Lake under Section 106(a)(5), and $136,139 for indirect contract support costs under Sections 106(a)(2) and (3) of the ISDEAA, 25 U.S.C. §§ 450j-1(2), (3), (5).

31.    The Tribe's proposal defined EMS for purposes of the Scope of Work as including: (1) providing 24-hour emergency response services for Intermediate/Basic Life Support in a remote/desolate area; (2) responding to emergency calls to provide pre-hospital patient triage, patient assessment, and providing appropriate on-site care for injured or ill patients in accordance with specified EMS guidelines and within individual EMT certification level; and (3) transporting patients who need emergency care to medical facilities from the field, and/or from one medical facility to another.

32.    On August 30, 2013, Mr. Elwood Lowery, the Tribe's Chairman, wrote to Dorothy Dupree, Director, PAIHS, noting that it had come to the Tribe's attention that the IHS had shut down the Fort McDermitt EMS program on August 19, 2013.  The letter asked whether the IHS had done this to free up program resources in order to contract the program with the Tribe.  The letter noted that the Tribe and the IHS had not yet concluded negotiations for the Tribe to assume operation of the program.  The letter expressed concern that shutting down the program on August 19, 2013 created a gap in EMS services for the Tribal community until such time as the Tribe would begin operating the EMS program under its ISDEAA contract.  The letter requested that Ms. Dupree respond to the Plaintiff and the FMT regarding how the IHS intended to provide EMS services during this transition period.

33. Ms. Dupree responded to Chairman Lowery by letter dated September 11, 2013. The letter stated the "reason the EMS program is currently not in service is due to the fact that Humboldt General Hospital refused to sign the annual base hospital agreement for Fort McDermitt's EMS program, which has previously been in place for many years." The letter noted that in accordance with Nevada law, "EMS programs must have a designated base hospital, otherwise the EMS operating permit is invalidated, and [the Fort McDermitt EMS program is] unable to lawfully transport patients on state highways."

34. Ms. Dupree also noted in her September 11, 2013 letter that IHS immediately sought assistance from the State EMS representative who informed IHS that IHS had no recourse against Humboldt General Hospital for declining to sign the base hospital agreement. The letter noted that IHS then contacted other hospitals in the region to secure a base hospital agreement but had not yet received a response. Given these circumstances, Ms. Dupree concluded that "IHS had no other alternative but to further suspend the service once [the Hospital] declined our hospital agreement."

35. In response to Chairman Lowery's question about a gap in service, Ms. Dupree stated in her September 11, 2013 letter, "The Fort McDermitt Paiute-Shoshone Tribe is not without emergency medical services because [Humboldt General Hospital] also operates an ambulance service in the town of McDermitt. They have agreed to provide services to the Fort McDermitt reservation." This is option two discussed in the Options Analysis. Ms. Dupree also noted in her September 11, 2013 letter that the ISDEAA required IHS to respond to the Tribe's proposal within 90 days and that IHS was aware of the deadline and would respond accordingly.

36. Ms. Dupree declined the Tribe's ISDEAA proposal by letter to Chairman Lowery dated September 30, 2013 (hereinafter "Declination Letter"). The Declination Letter argues that

IHS operates the Fort McDermitt EMS program "at a loss" because third party revenues generated by the EMS program do not cover the program's operating expenses.  The IHS makes up the difference from other third party revenues generated by the Fort McDermitt clinic and from IHS appropriations.  The Declination Letter notes that "PAIHS has thus been forced to support the EMS program at the expense of other health programs operated through the Schurz Service Unit, specifically the Fort McDermitt Clinic."

37. The Declination Letter states the following as the basis for the agency's decision to end the EMS program:

> The EMS program's operating losses, which were borne by the Fort McDermitt Clinic, force the Agency to conclude that the EMS program was financially untenable and that the funds used to support the program could be better utilized at the Clinic.  Indeed, because the EMS program was actually taking money away from the Fort McDermitt Clinic, continuing to operate the EMS program at such a severe deficit would not be in the interest of IHS beneficiaries.  Accordingly, PAIHS ceased operation of the Fort McDermitt EMS program on August 19, 2013.  This decision was discussed with the Fort McDermitt Tribe on September 12, 2013.  In making this decision, PAIHS exercised its lawful discretion to allocate its limited funds from its lump sum appropriation in the manner it believes would best meet its duty to provide health care to IHS beneficiaries.

38. The Declination Letter relies on the fourth declination criterion:  "the amount of funds proposed under the contract is in excess of the applicable funding level for the contract as determined under section 450j-1(a) of this title."  25 U.S.C. § 450f(a)(2)(D).  The Declination Letter states that "because IHS ended the EMS program effective August 19, 2013, the amount available for contracting in FY 2014 pursuant to 25 U.S.C. § 450j-1(a)(1) is zero," citing *Los Coyotes Band of Cahuilla & Cupeno Indians v. Jewell, et al.*, No. 11-57222, 2013 WL 4734037 (Sept. 4, 2013).

39.     The Declination Letter asserts a second reason for declining the Tribe's proposal, citing 25 U.S.C. § 450f(a)(2)(D) and arguing that third party revenues generated by the Fort McDermitt Clinic, and used by the IHS to support the EMS program, are speculative and not themselves a program, function, service or activity available for contracting under the ISDEAA.

## CAUSES OF ACTION

<u>COUNT 1—Declaratory Relief: Termination of the EMS Program Violates the ISDEAA</u>

40.     The allegations in Paragraphs 1—39 are herein incorporated by reference.

41.     The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes this Court to grant declaratory relief.

42.     The FMT Tribal Council adopted Resolution No. FM13-001-002 on January 13, 2013 sanctioning the Plaintiff as the FMT's tribal organization for purposes of ISDEAA contracting under 25 U.S.C. § 450b(*l*).  The Resolution authorized the Plaintiff to enter into negotiations with the IHS to contract the Fort McDermitt EMS program under 25 U.S.C. § 450f(a)(1).  Section 450f(a)(1) provides that "[t]he Secretary is directed, upon the request of any Indian tribe by tribal resolution, to enter into a self-determination contract or contracts with a tribal organization to plan, conduct and administer programs, or portions thereof . . . ."  This is mandatory language.  The Secretary must enter into a self-determination contract upon the request of an Indian tribe by resolution of the tribal government.

43.     The ISDEAA, 25 U.S.C. § 450f(a)(2), provides, "[i]f so authorized by an Indian tribe under paragraph (1) of this subsection, a tribal organization may submit a proposal for a self-determination contract, or a proposal to amend or renew a self-determination contract, to the Secretary for review."  Section 450f(a)(2) provides that "the Secretary shall" within 90 days after receipt of the proposal approve the proposal and award the contract unless the Secretary declines

the proposal under one or more of five listed declination criteria.  This is also mandatory language.

44.	As a matter of law, after the IHS received the Tribe's proposal to include the Fort McDermitt EMS program within the Tribe's self-determination contract, the IHS had only two choices within the 90 day statutory review period: either approve the proposal and award the contract or decline it under the terms of § 450f(a)(2).  The ISDEAA does not allow the IHS to treat the Tribe's contract proposal as optional and instead decide to end the EMS program and purchase EMS services for the Fort McDermitt reservation from the Hospital.  Terminating the EMS program during the 90 day review period and contracting with the Hospital to prevent the Tribe from contracting the EMS program is not an option under Section §450f(a)(2).

45.	The Tribe asks this Court to declare that IHS' termination of the Fort McDermitt EMS program, during the 90 day review period – after IHS's receipt of the FMT's resolution and the Tribe's contract proposal –  violates the ISDEAA, 25 U.S.C. §§ 450f(a)(1) and (a)(2), and that Plaintiff's EMS proposal, as proposed, is approved by operation of law.  The IHS cannot decline the Tribe's proposal based on agency action that violates the ISDEAA.

COUNT II:   Mandamus and Injunctive Relief: Award and Fund the Proposed Contract Amendment.

46.	The allegations in Paragraphs 1—45 are incorporated herein by reference.

47.	The ISDEAA, 25 U.S.C. § 450m-1(a), authorizes this Court to provide mandamus relief "to compel an officer or employee of the United States, or any agency thereof, to perform a duty provided under this subchapter or regulations hereunder."  Section 450m-1(a) also authorizes this Court to provide injunctive relief "against any action by an officer of the United States or any agency thereof contrary to this subchapter . . . (including immediate injunctive

relief to reverse a declination finding under section 450f(a)(2) of this title or to compel the Secretary to award and fund an approved self-determination contract)."

48.     The IHS declined the Tribe's proposal, asserting that after IHS terminated the Fort McDermitt EMS program on August 19, 2013, the amount available for contracting the EMS program was zero dollars, citing the declination criterion at § 450f(a)(2)(D).  Section 450f(a)(2)(D) provides that the Secretary may decline a contract proposal if "the amount proposed under the contract is in excess of the applicable funding level for the contract, as determined under section 450j-1(a) of this title."  But the IHS cannot invoke the declination criterion in § 450(a)(2)(D) based on terminating the EMS program in violation of the provisions of § 450(a)(1) and (a)(2).

49.     Because the IHS improperly terminated the Fort McDermitt EMS program during the 90 day review period after the Tribe submitted its contract proposal, the IHS cannot invoke the declination criteria in § 450f(a)(2)(D) to justify its declination of the Tribe's proposal. Terminating the EMS program under these circumstances violated the ISDEAA and cannot be used to support a declination finding under § 450f(a)(2)(D) that no funds are legally available for this contract.  In the absence of a valid declination, the Tribe's contract proposal must be approved as a matter of law under the terms of § 450f(a)(2).  The ISDEAA, 25 U.S.C. § 450m-1, authorizes this Court to provide mandamus and injunctive relief to compel the Federal Defendants to approve the Tribe's proposal and award and fund the contract as proposed.

50.     The Declination Letter asserts as an alternate ground to declination under 25 U.S.C. § 450f(a)(2)(D), that third party revenues are not legally available for a self-determination contract because these funds are "speculative" and by their nature not a program, function, service or activity (PFSA) that is contractible under § 450f(a)(1).   This argument is contrary to

the ISDEAA.  Section 450f(a)(1) does not require that the funds supporting a contractible program or portion of a program be themselves PFSAs subject to contracting separately from the program they support.  Nor does § 450j-1(a)(1) distinguish between sources of funding for the contract.

51.     The ISDEAA, 25 U.S.C. § 450j-1(a)(1), requires that "*[t]he amount of funds provided* under the terms of self-determination contracts entered into pursuant to this subchapter shall not be less than the appropriate Secretary would have otherwise provided for the operation of the programs or portions thereof for the period of the contract . . . ." (emphasis added).  Section 450j-1(a)(1) requires that contract funding be in an "amount" no less than the IHS would otherwise provide to operate the EMS program itself.  IHS is free to fund the contract from IHS appropriations or third party revenues or a combination of both, so long as IHS provides the "amount" required by § 450j-1(a)(1).  Section 450j-1(a)(1) cannot be reasonably read to make third-party clinic revenues "legally unavailable" for contracting.

52.     Even though third-party clinic revenues are collected throughout the year and are not recurring, and even if the IHS were unable to commit to a specific amount of funding from collected third-party revenues, the ISDEAA allows for quarterly, semi-annual, lump-sum or other methods of payment at the Tribe's option, 25 U.S.C. § 450*l*(c) (Section 1(b)(6)(B) of the Model Contract).  For example, the parties can agree in contract negotiations that such third-party revenues are non-recurring and subject to the actual amounts collected.  The ISDEAA's implementing regulations specifically state that the Secretary cannot decline to enter into a contract with an Indian tribe based on any objection that will be overcome through the contract.  25 C.F.R. § 900.23.

53. The Plaintiff asks this court to reverse the IHS declination decision and compel the Federal Defendants to approve the Plaintiff's proposal and award and fund the contract as proposed.

## PRAYER FOR RELIEF

54. Section 450m-1(a) of the ISDEAA authorizes this court to provide appropriate relief including money damages, injunctive relief against any action by the Defendants contrary to the ISDEAA or its implementing regulations, and mandamus to compel Defendants to perform a duty provided under the ISDEAA, including immediate injunctive relief to compel Defendants to award and fund the Plaintiff's proposal by operation of law. Plaintiff respectfully asks that this court:

    A. Declare that Defendants violated the ISDEAA by terminating the Ft. McDermitt EMS program after receiving Plaintiff's proposal to contract that program;

    B. Declare that Plaintiff's EMS proposal, as proposed, is approved by operation of law;

    C. Grant mandamus and injunctive relief to compel Defendants to approve Plaintiff's EMS proposal; to enter into and fund a self-determination contract with Plaintiff to carry out the Fort McDermitt EMS program as proposed; and to pay Plaintiff at least the amounts requested in the proposal: $502,611.30 as the Section 106(a)(1) amount, plus $196,739 for startup costs, plus $136,139 for indirect contract support costs;

    D. Award interest on the amounts requested in the proposal from the date of the deemed approval of the final offer under the Prompt Payment Act or other applicable law;

  E.  Award reasonable attorney fees and expenses in favor of Plaintiff under the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable law; and

  F.  Grant such other relief as the Court deems just.

\_s/ Caroline Mayhew_____
Caroline Mayhew (DC Bar No. 1011766)
Hobbs, Straus, Dean, & Walker LLP
2120 L St. NW, Suite 700
Washington, DC  20037
202-822-8282 (Tel.)
202-296-8834 (Fax)

Geoffrey D. Strommer
Starla K. Roels
Hobbs, Straus, Dean & Walker, LLP
806 SW Broadway, Suite 900
Portland, OR 97205
503-242-1745 (Tel.)
503-242-1072 (Fax)

Attorneys for the Pyramid Lake Paiute Tribe

DATED: November 8, 2013.